J-S60031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.J.Y., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.D., MOTHER | No. 848 MDA 2014 |

Appeal from the Decree entered April 14, 2014,
in the Court of Common Pleas of Luzerne County, Orphans'
Court, at No(s): A-8099

BEFORE:    OTT, STABILE, and JENKINS, JJ.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 19, 2014**

L.D. ("Mother") appeals from the decree dated and entered on April 14, 2014, in the Luzerne County Court of Common Pleas, Orphans' Court Division, involuntarily terminating her parental rights to her son, D.J.Y. ("Child"), born in May of 2005, pursuant to section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1) and (b).[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Child is autistic and has Attention Deficit Hyperactivity Disorder (ADHD). Trial Ct. Op., 6/12/14, at 6.  In 2007, Luzerne County Children and Youth Services ("CYS") removed Child from the care of Mother and Father and placed Child in the custody of Child's maternal great aunt ("Great Aunt") and great uncle ("Great Uncle") (together, "Petitioners"), in whose care Child has remained up to the filing of the subject termination petition.  *Id.* at 2.  On June 16, 2008, the trial court entered an order, giving primary physical

---

[1] The trial court, by separate decree dated and entered on April 14, 2014, also involuntarily terminated G.Y.'s ("Father's") parental rights to Child. Father did not participate in any of the lower court proceedings, has not appealed the decree terminating his parental rights to Child, and is not a party to this appeal.

custody of Child to Petitioners, allowing Mother visitation with Child, and requiring Mother to complete a parenting class, a drug and alcohol evaluation, and a mental health evaluation. *Id.* at 7, 14. Pursuant to the order, Mother was also required to provide to the trial court written documentation verifying that she had completed all of the requirements. *Id.* at 7.

On August 23, 2013, Petitioners filed a petition for the involuntary termination of Mother and Father's parental rights to Child, alleging the elements of 23 Pa.C.S.A. § 2511(a)(1) and (b) as grounds for termination. *Id.* at 1. The trial court held an evidentiary hearing on April 9, 2014. *Id.* At the hearing, the trial court heard testimony from Petitioners and Mother. S.D. ("Maternal Grandmother"), R.P. ("Maternal Great Grandmother"), and Mother's 15-year-old son, Child's brother, O.Y., also testified at the hearing.

Great Aunt testified that, over the course of the six months prior to filing the termination petition (February 23, 2013 to August 23, 2013), Mother did not have any contact with Child, nor had she fulfilled any parental duties on Child's behalf:

> Q. From February 23rd, 2013 up to the date of August 23rd, 2013, has [Mother] had any contact with [Child]?
> A. No.
> Q. Has she made any phone calls to [Child]?
> A. No.
> Q. Has she sent any cards or letters to [Child]?
> A. No.
> Q. Has she sent any gifts to [Child]?
> A. No.
> Q. Has she come by the house and asked to speak to [Child]?
> A. No.
> Q. Has she had any indirect contact with [Child] through Facebook or social media?
> A. No.

Q. During that period of time, have you prevented her from contacting [Child]?
A. No.
Q. Does [Mother] provide any type of financial support for [Child]?
A. No.
Q. Does she pay child support?
A. No.
Q. Is she court ordered to pay child support?
A. No.
Q. Does she drop off clothing for [Child]?
A. No.
Q. Does she drop off food for [Child]?
A. No.
Q. Does she give you any support outside of the court for [Child]?
A. No.
Q. . . . has she taken [Child] to any doctor's appointments?
A. No.
Q. Dentist appointments?
A. No.
Q. Mental health appointments?
A. No.
Q. Has she done any parental duties whatsoever on behalf of [Child] during that six-month period?
A. No.

Notes of Testimony, 4/9/14, at 18-20. Great Aunt further testified that Mother could have contacted Child during the six months prior to the filing of the termination petition since Mother was aware of Petitioners' telephone number, having previously called Great Aunt on that exact telephone number, as well as Petitioners' address, having previously visited Petitioners' residence. *Id.* at 11-12. Great Uncle corroborated Great Aunt's testimony and testified that he, too, had done nothing to prevent Mother from contacting or seeing Child during the six months prior to filing the termination petition. *Id.* at 49-50. Further, Petitioners testified that it is

their intention to adopt Child should the trial court grant the termination petition. *Id.* at 46-48.

In her testimony, Mother admitted that she had not performed parental duties such as taking Child to the doctor, dentist, or optometrist since Child was two years old, and that, since 2008, besides running into Child on occasion at a family affair, she had only seen Child on one occasion—his eighth birthday in May 2013. *Id.* at 97, 108-109. Mother also confirmed that, in the six months prior to the filing of the termination petition, she did not telephone Petitioners to speak with Child, nor did she send any cards, letters, gifts, or money to Petitioners for Child. *Id.* at 97-98, 109.

On cross-examination, Mother testified to her issues with substance abuse, indicating that, on January 18, 2013, she had pleaded guilty to possession of a controlled substance and, from February 2013 to the beginning of March 2013, was incarcerated for retail theft and possession of a controlled substance. *Id.* at 99-100. In addition, on March 11, 2013, Mother pleaded guilty to public drunkenness and similar conduct. *Id.* at 99. Mother further testified that, upon her release from incarceration in March 2013, she admitted herself to Valley Forge Medical Center, a rehab facility, and that she had remained sober since being successfully discharged from the facility in April 2013. *Id.* at 79, 113. Nevertheless, despite being able to provide the trial court with a certificate evidencing her successful completion of a rehabilitative programs, Mother failed to supply written documentation verifying her completion of a drug and alcohol evaluation and

a mental health evaluation, as required by the trial court's June 16, 2008 order. Trial Ct. Op. at 7.

On April 14, 2014, the trial court entered corresponding decrees, terminating the parental rights of Mother and Father, respectively, pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). On May 14, 2014, Mother simultaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises a single question for our review:

> Whether the trial court erred in finding that [Petitioners] met [their] burden to prove the elements of termination with respect to [23 Pa.C.S.A. § 2511(a)(1) and (b)][] through clear and convincing evidence?

Mother's Brief at 3.

We review appeals from the involuntary termination of parental rights according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re:*] *R.I.S.*, [614 Pa. 275], 36 A.3d [567, 572 (2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel-Bassett v. Kia Motors America, Inc.*, [613 Pa. 371], 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (1994).

**In re Adoption of S.P.**, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2511, which requires a bifurcated analysis:

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (*citing* 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of

parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, the trial court terminated Mother's parental rights pursuant to section 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

- 7 -

23 Pa.C.S.A § 2511(a)(1), (b).

With respect to section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (*citing In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). Further,

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* (*quoting In re Adoption of Charles E.D.M.*, 550 Pa. 595, 602, 708 A.2d 88, 92 (1998)).

This Court has emphasized that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted). We have explained:

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*Id.*

Further, we have stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

In her brief on appeal, Mother essentially argues that Petitioners presented insufficient evidence to sustain their burden under section 2511(a)(1) and (b), and, thus, that the trial court abused its discretion in terminating her parental rights to Child. Specifically, Mother contends that the trial court erred in finding that Mother's conduct during the six months prior to the filing of the termination petition established her refusal or failure to perform parental duties on Child's behalf or evidenced Mother's settled purpose of relinquishing her parental claim to Child. In support, Mother emphasizes her testimony that she maintained regular contact with Child up to her incarceration from February 2013 to the beginning of March 2013,

during which she claims that she was unable to telephone Petitioners to speak to Child and had no funds to buy stamps to send cards or letters to Child. Mother's Brief at 8 (*citing* N.T., 4/9/14, at 96). In addition, Mother avers that, after being successfully discharged from rehabilitation in April 2013, she made several attempts to contact Child, all of which were unsuccessful because Petitioners, recognizing Mother's telephone number on their caller identification, refused to answer her phone calls. *Id.* at 9 (*citing* N.T., 4/9/14, at 79-81).

In its Rule 1925(a) opinion, the trial court explained its analysis under section 2511(a)(1) as follows:

> With grounds for termination under [section 2511(a)(1)], the first line of inquiry. . . is the parent's explanation for his or her conduct. . . . Mother testified that [during her incarceration from February 2013 to the beginning of March 2013] she did not request visits with [Child] because she believed [that] prison is an inappropriate place to visit for a child. However, Mother did not make any attempts to call[] [or] send letters or cards to [Child] while she was incarcerated. When Mother was questioned several times as to the reason for [her] not calling [Child] from prison, Mother seemed to avoid answering the questions by answering that the counselors did not care. Then[,] when asked specifically as to whether she attempted to call [Child] from prison, Mother responded that she requested a "male" to make a phone call on three (3) different occasions in February of 2013 and that the "male" would not call [anymore] and that no one cared. Mother also did not write to [Child] from prison claiming that she did not have money for stamps. It is also interesting to note that subsequent to being released from prison, Mother was in Valley Forge Medical Rehabilitation Center from March 2013 until April 2013. During her stay, Mother also did not call or write to [Child], claiming that she had no funds to do so. However, when Mother left the Rehabilitation Center in April of 2013, Mother still did not call or write to [Child] between April 2013 and August 2013. During that time, Mother was neither incarcerated nor in a [r]ehabilitation [c]enter.

Mother gave inconsistent testimony regarding calling [Child] between February 2013 and August 2013. Mother testified that in April of 2013, she was calling [Petitioners'] residence, but [Petitioners] would not answer the telephone. Then[,] Mother testified that she did not telephone [Petitioners] to speak to [Child] between February 23, 2013 and August 23, 2013.

The [trial court] finds that Mother did not attempt to call or write to [Child] while she was incarcerated. The [trial court] does not find Mother credible in testifying that she asked a male to call or that she had no funds to write a letter. Even after Mother was released from prison and the rehabilitation center, Mother still did not call or write to [Child] for the remaining four (4) months prior to the filing of the [termination petition].

[Based on the foregoing, the trial court finds that Mother] did not utilize [the] resources [available to her in prison] to maintain a place of importance in [Child's] life. Thus, the [trial court] finds [that] Mother has refused or failed to perform any parental duties between February 23, 2013 and August 23, 2013 and did not offer a reasonable explanation for not performing her parental duties.

The second line of inquiry is the post-abandonment contact between parent and child. There is credible testimony given by [Great Aunt] that Mother did not have any contact with [Child] six (6) months prior to filing the [termination petition] (between February [23,] 2013 and August 23, 2013)[.] [Child] has been living with [Great Aunt] since 2007. Mother testified that the only time she saw [Child] was when the families got together. Mother testified that she saw [Child] on one or two occasions in December of 2013 when [Child] and [Great Aunt] were visiting [Maternal Great Grandmother's] home.

Trial Ct. Op. at 8-11 (internal citations omitted).

After a careful review of the record, we conclude that the trial court's findings are supported by clear and convincing, competent evidence, and that it reasonably concluded that Mother, by her conduct during the six-month period preceding the filing of the termination petition, demonstrated a settled purpose of relinquishing her parental claim to Child and/or her

refusal or failure to perform parental duties on Child's behalf, in accordance with section 2511(a)(1). Further, to the extent that Mother is asking this Court to revisit the trial court's determinations regarding the credibility of the testifying witnesses, we find that the trial court's findings are supported by competent evidence of record and, accordingly, discern no abuse of discretion or error of law on the trial court's part. *See In re Adoption of R.J.S.*, 901 A.2d at 506 (stating that "[t]he trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence.") (internal citations omitted).

We now turn our attention to section 2511(b) and look to see if the trial court properly found that termination was in the best interest of Child. With respect to section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In its analysis of section 2511(b), the trial court explained:

The third line of inquiry. . . requires the [trial court] to review the evidence in support of termination under [section 2511(b)]. . . . The [trial court] finds that [Child's] physical needs are met by [Petitioners]. [Great Aunt] testified that [] she and [Great Uncle] take [Child] regularly to the pediatrician and that [Child's] immunizations are up to date. [Great Aunt] testified that [Petitioners] own their home and [Child] has his own room. [Great Aunt] stated she prepares [Child's] meals and also insures that [Child] has sufficient clothing to wear.

The [trial court] finds that [Petitioners] also meet [Child's] developmental needs. [Great Aunt] testified that since [Child] is autistic and has ADHD, [Child] takes medications. [Child] also has a [Therapeutic Staff Support] worker who works with [Child] twenty (20) hours per week. [Child] has a behavioral specialist who comes to [Child's] residence two (2) hours every two (2) weeks and who also works with [Child] once per week at [Child's] school. [Great Aunt] testified that she works with a mobile therapist who assists [Child] once per week for two (2) hours at the house.

The [trial court] also finds that [Petitioners] meet [Child's] emotional needs. [Great Aunt] testified that [Child] calls her "Mommy" and [Great Uncle], "Daddy." [Petitioners] adopted [Child's] sister who resides with them. According to [Great Aunt], [Child] is very loving to his sister and views her and [Petitioners] as his family. Also, when [Child] is upset, [Great Aunt] provides him emotional support. [Great Aunt] testified that she understands [Child's] needs. [Great Aunt] testified that she knows how to calm [Child] down when he is upset and when he has tantrums. [Great Aunt] testified that she and [Great Uncle] work with a mobile therapist who teaches them how to address [Child's] emotional issues.

According to [Great Aunt], there is no emotional bond between [Child] and [Mother]. [Great Aunt] testified that [Child] does not remember [Mother], nor does [Child] ask for her. According to [Great Aunt], [Child] does not say he misses [Mother]. [Great Aunt] testified that [Child] knows [Mother] is part of the family because [Maternal Grandmother] and [Maternal Great Grandmother] remind [Child] about [Mother].

[Great Aunt] testified that [Child] calls her "Mommy" and [Mother], "Mommy [L]." Mother admitted that although she does believe there is still a bond between herself and [Child], the bond is now stronger between [Great Aunt] and [Child].

[Great Aunt] testified that she would like to adopt [Child] should the [trial court] terminate parental rights. [Great Aunt] emphasized that she and [Great Uncle] already adopted [Child's] sister. [Great Aunt] testified that she loves [Child] and if she were to adopt him, she knows she will be legally and financially responsible for him. . . . [Great Uncle] also testified that it is [Petitioners'] intention to adopt [Child], and further understands that he would be financially responsible for [Child]. . . .

The [trial court] finds that [] Mother is not able to meet [Child's] best interests or needs. In stark contrast, [Petitioners] have amply demonstrated they continue to meet [Child's] physical, developmental and emotional needs and that [Child] has thrived under their care. [Child] needs and deserves a permanent home. The only way to provide this to [Child] is to terminate the rights of [] Mother. Clearly[,] it is in [Child's] best interest to do so.

Trial Ct. Op. at 11-17 (internal citations omitted).

Here, our review of the record indicates that there is competent evidence to support the trial court's decision that termination of Mother's parental rights best serves Child's developmental, physical, and emotional needs and welfare. Although Mother has expressed a willingness to fulfill her parental duties regarding Child's needs and welfare, her failure to put herself in a position to develop a parental bond with Child as well as her complete absence throughout the majority of Child's life illustrate her inability to do so. Moreover, the trial court found that Child has bonded with Petitioners, who are pre-adoptive, have served as Child's foster parents since he was three years old, and ably provide for Child's special needs. In fact, as noted by the trial court, Mother, by her own admission, confirmed that Child has a stronger bond with Great Aunt than with her. As such, we

find that it was appropriate for the trial court to determine that the termination of Mother's parental rights would not have a detrimental effect on Child and would be in Child's best interest. In consideration of these circumstances and our careful review of the record, we conclude that the trial court did not abuse its discretion or commit an error of law in finding competent evidence to support the termination of Mother's parental rights to Child under section 2511(b).

Accordingly, for the reasons stated above, we affirm the trial court's decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2014